**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CHRISTINE THOMAS,** on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **NAPLES SOAP COMPANY, INC.,** <br><br> Defendant. | **Docket No.:** <br><br><br> **CLASS ACTION COMPLAINT &** <br> **DEMAND FOR JURY TRIAL** |

Plaintiff, Christine Thomas ("Plaintiff" or "Ms. Thomas"), individually and on behalf of all others similarly situated, by and through undersigned counsel, Robert Schonfeld, Esq. of JOSEPH & NORINSBERG, LLC, brings this action against NAPLES SOAP COMPANY, INC. ("Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., the New York Civil Rights Law ("NYCRL"), N.Y. Civ. Rights Law § 40 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.

## INTRODUCTION

1. Plaintiff, CHRISTINE THOMAS, is a legally blind resident of Bronx County, New York. As documented by Christopher R. Scheno, O.D., of Optix Now, Ms. Thomas is legally blind as a result of severe bilateral ocular trauma sustained at approximately age 12 as a direct result of a vehicular accident. Her right eye suffered complete and permanent loss of vision with an absence of light perception; her left eye sustained severely compromised and significantly impaired visual function. The combined bilateral visual impairment constitutes legal blindness under applicable federal and New York State standards, and there are no treatments or interventions expected to restore any degree of visual function. (See Exhibit A.)

2.      Ms. Thomas is a proficient user of screen-reading software, including Job Access With Speech ("JAWS") and/or NonVisual Desktop Access ("NVDA"), which she relies on daily to navigate digital environments independently. Her reliance on keyboard-based navigation and screen-reading protocols enables her to engage with online retail platforms, product pages, shopping carts, and checkout portals without sighted assistance. Screen-reading software is indispensable to her autonomy and digital access. Due to the permanent nature of her condition, Ms. Thomas will require assistive technology and digital accessibility accommodations for the remainder of her life.

3.      This action arises from Defendant NAPLES SOAP COMPANY, INC.'s failure to design, maintain, and operate its website, www.naplessoap.com (the "Website"), in a manner accessible to blind and visually impaired individuals. The Website functions as an interactive retail platform and digital gateway through which Defendant markets and sells soaps, lip balms, body oils, and related personal-care products to consumers throughout the United States, including New York.

4.      On multiple occasions in April, May, and June 2026, Ms. Thomas visited www.naplessoap.com using screen-reading software with the genuine intent to shop for personal-care products for her own use. Specifically, Ms. Thomas sought to review and purchase Defendant's SPF 15 Coconut Lip Balm, Beach Bamboo Body Oil Spray 2 oz, and Fragrance Free Spa Bliss Soap, and to browse related offerings sold through the Website.

5.      Ms. Thomas was drawn to Defendant's array of natural skincare, bath, body, and personal-care products designed for ordinary consumer use, including products marketed for sensitive skin and daily care. Defendant prominently markets specialty bath, body, and skincare products directly through its online store and represents those products through product pages

intended to convey key information to consumers, including product identity, imagery, features, pricing, and purchasing functions.

6.      During her visits to the Website, on April 16, 2026, May 22, 2026, and June 11, 2026, respectively, Ms. Thomas attempted to browse product offerings, review product descriptions and product-specific information for the SPF 15 Coconut Lip Balm, Beach Bamboo Body Oil Spray 2 oz, and Fragrance Free Spa Bliss Soap, identify pricing and purchasing controls, add desired items to her cart, and proceed through the purchase flow.

7.      Because www.naplessoap.com lacked proper alternative text for images, contained empty and unlabeled interactive buttons and links, featured missing or improperly implemented form labels, and failed to provide screen-reader-compatible markup throughout key portions of the relevant pages, Ms. Thomas was unable to meaningfully access product information, compare available items, or independently complete her intended purchases.

8.      These barriers are not isolated defects. The WAVE accessibility scans provided for Defendant's product pages reveal repeated accessibility errors affecting the precise product pages Plaintiff sought to access, including the pages for SPF 15 Coconut Lip Balm, Beach Bamboo Body Oil Spray 2 oz, and Fragrance Free Spa Bliss Soap. Across those pages, the audit materials reflect numerous accessibility errors and recurring barrier types, including missing alternative text, empty buttons, empty links, and form-labeling defects.

9.      These barriers directly interfered with Plaintiff's ability to access the specific products she sought to review and purchase. Because the product pages included product images without meaningful text alternatives, Ms. Thomas could not independently understand product presentation or other visually conveyed information associated with those items. Because the pages contained empty buttons and empty links, she could not reliably determine the purpose of actionable controls needed to navigate the page, select purchase options, add items to her cart, or

proceed toward checkout. Because the pages contained missing or improperly labeled form controls, Ms. Thomas could not independently operate interactive shopping elements necessary to complete purchases.

10.     Defendant NAPLES SOAP COMPANY, INC., upon information and belief, owns and operates www.naplessoap.com as a nationwide e-commerce platform offering personal-care and related products to consumers across the United States, including New York. The Website is Defendant's principal and, upon information and belief, primary direct-to-consumer sales channel.

11.     Ms. Thomas specifically sought out www.naplessoap.com because Defendant markets the very category of personal-care products that she regularly purchases for her own use, namely lip-care products, soaps, and body oils. She was particularly interested in Defendant's SPF 15 Coconut Lip Balm because it combines lip moisturization with SPF protection in a single item, in Defendant's Beach Bamboo Body Oil Spray 2 oz because it is presented as a body-oil product suited for routine skin-care use, and in Defendant's Fragrance Free Spa Bliss Soap because fragrance-free soap products are especially attractive to consumers seeking gentle, everyday cleansing products. These are practical, everyday-use items rather than specialty luxury goods purchased on a one-time basis.

12.     Ms. Thomas is legally blind and has sustained permanent bilateral ocular disability. Her right eye has complete and permanent loss of vision with no light perception, and her left eye is severely compromised and significantly impaired such that she is unable to perform routine visual tasks at a level consistent with standard functional capacity. As a consequence of this impairment, her daily functioning, independent mobility, personal independence, and overall quality of life are substantially and materially affected. She therefore depends on screen-reading software and accessible online interfaces to shop privately and independently for ordinary household and personal-care necessities without having to rely on third parties.

13.    Ms. Thomas's interest in Defendant's Website is concrete, genuine, and non-speculative. She did not visit www.naplessoap.com as a tester detached from any consumer objective; rather, she visited because Defendant offers consumable personal-care products of the exact kind she uses and purchases in ordinary life and because she wanted to evaluate and purchase those specific items through Defendant's direct-to-consumer online store. In light of her visual impairment, accessible online shopping is especially important to her because in-person shopping often requires assistance from others to identify products, review labels, compare options, and complete purchases, thereby compromising her independence and privacy.

14.    Ms. Thomas intends to return to www.naplessoap.com promptly once the accessibility barriers are removed in order to complete the purchases she previously attempted to make and to browse additional bath, body, and skincare offerings sold by Defendant. Her desire to return is strengthened by the fact that the products she targeted serve recurring, everyday personal-care purposes—lip protection, skin moisturization, and fragrance-free cleansing—and are therefore the kinds of items that require replenishment over time. Because Defendant's Website is designed to provide product-specific information, purchasing functions, and access to Defendant's broader catalog, Ms. Thomas will continue to revisit the Website to evaluate current offerings and make future purchases if it is made accessible.

15.    Without remediation of the barriers described herein, Ms. Thomas will continue to be excluded from accessing Defendant's goods and services on equal terms with sighted consumers. Defendant's ongoing failure to provide accessible digital services constitutes a denial of full and equal access under Title III of the ADA and under New York State and City law. Plaintiff respectfully requests that this Court issue a permanent injunction compelling Defendant to bring its Website into compliance with federal accessibility standards, together with damages, statutory relief, attorneys' fees, costs, and such other relief as set forth below.

**JURISDICTION AND VENUE**

16.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., which prohibits discrimination by places of public accommodation, including those operating commercial websites.

17.    This Court has supplemental jurisdiction over Plaintiff's related state and city law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims. All claims arise from a common nucleus of operative fact: Defendant's operation of an inaccessible website that denies blind consumers equal access to its goods and services.

18.    Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District, accessed Defendant's Website from within this District, and personally experienced the discriminatory barriers alleged herein while attempting to evaluate and purchase Defendant's products.

19.    Defendant is subject to personal jurisdiction in this District because it purposefully avails itself of the privilege of conducting business in New York through its highly interactive commercial website, through which consumers can browse products, customize bundles, add items to a cart, and complete purchases online.

20.    Courts routinely support venue placement in the district where the plaintiff attempted and failed to access the public accommodation. See Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158 (2d Cir. 2010); Reed v. 1-800-Flowers.com, Inc., 327 F. Supp. 3d 539 (E.D.N.Y. 2018); Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); see also Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 141 S. Ct. 1017 (2021). In Access Now, Inc. v. Otter Products, LLC, 280 F. Supp. 3d 287 (D. Mass. 2017), the court held that although the website

may have been created and operated outside the district, attempts to access the website in the forum state are part of the sequence of events underlying the claim.

21.    This satisfies due process because the harm—the barred access—occurred within the forum. Here, Plaintiff's attempts to access Defendant's Website from Bronx County establish venue in this District.

22.    Similarly, in Access Now, Inc. v. Sportswear, Inc., No. 17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), the court held that a defendant availed itself of the forum state's economic activities by targeting the residents of the forum through a consumer-facing e-commerce site. Defendant here has availed itself of New York's economic activities by intentionally marketing and selling its products to New York consumers through www.naplessoap.com, which is designed to serve a nationwide customer base, including residents of this District.

23.    This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## NATURE OF ACTION

24.    This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's Website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its Website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

25.     The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating for sighted, blind, and visually impaired individuals alike.

26.     In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen-access software that vocalizes visual content or displays it on a refreshable Braille device. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

27.     Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

28.     Plaintiff, CHRISTINE THOMAS, is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYSHRL, NYCHRL, and NYCRL.

29.     For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software translates the visual Internet into an auditory equivalent, reading page content, announcing links, buttons, headings, labels, and other interface elements so the user can navigate through keyboard commands.

30.     The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and

government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

31.    Non-compliant websites pose recurring barriers to blind and visually impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements (e.g., product images without alternative text);

b. Unlabeled frames and navigation regions;

c. Scripts without accessible alternatives;

d. Inaccessible forms and input fields;

e. Content conveyed solely through visual presentation;

f. Inability to resize text without loss of functionality;

g. Time limits that cannot be adjusted or disabled;

h. Missing or ambiguous page titles and headings;

i. Links lacking descriptive context;

j. Keyboard focus indicators that are not discernible;

k. Undetectable default language settings;

l. Components that trigger unexpected context changes;

m. Settings that alter context without user notice;

n. Input fields lacking labels or instructions;

o. Improperly nested markup, duplicate attributes, and non-unique IDs;

p. Inaccessible PDF files;

q. User interface elements whose roles and states cannot be programmatically determined; and/or

r. Empty buttons, empty links, and unlabeled interactive controls that prevent a screen reader user from independently navigating and completing a transaction.

**STATEMENT OF FACTS**

32.     Plaintiff CHRISTINE THOMAS is a legally blind consumer residing in Bronx County, New York, at 210 East 203rd Street, Bronx, New York 10458. She has been clinically evaluated and found to have sustained severe bilateral ocular trauma at approximately age 12 as a direct result of a vehicular accident, resulting in complete and permanent loss of vision in the right eye and severely compromised visual function in the left eye. Ms. Thomas's diagnosis and legal blindness status are documented by Christopher R. Scheno, O.D., of Optix Now, 2848 Bellmore Avenue, Suite 001, Bellmore, New York 11710. (See Exhibit A.)

33.     As confirmed in the July 15, 2026 medical letter, Ms. Thomas's right eye is clinically non-functional with an absence of light perception, and no treatment or intervention is expected to restore any degree of visual function. Her left eye's residual vision is severely limited and does not meet the threshold required for normal functional vision. The combined bilateral visual impairment constitutes legal blindness as defined under applicable federal standards and applicable New York State standards. Ms. Thomas accordingly requires accommodations afforded to legally blind persons under state and federal law. Her impairment is not episodic or situational—it is a permanent, lifelong condition arising from physical trauma sustained during childhood.

34.     Ms. Thomas relies on screen-reading software—including JAWS and/or NVDA—to navigate the Internet and complete online transactions independently. She uses keyboard-based navigation to browse, select items, and attempt purchases on retail websites. Without a properly coded, screen-reader-compatible website, Ms. Thomas cannot independently access online shopping services on the same terms as sighted consumers.

35.     On or about April 16, 2026, Plaintiff visited www.naplessoap.com to review and purchase Defendant's SPF 15 Coconut Lip Balm, a product that drew her interest because it appeared to combine everyday lip moisturization with sun-protection benefits in a single item.

36.     While on the SPF 15 Coconut Lip Balm page at www.naplessoap.com, Plaintiff attempted to use her screen reader to confirm that she had reached the correct product page, determine the product's appearance and visually conveyed features, review associated product information, identify the control for adding the item to her cart, and move forward with the purchasing process.

37.     During that visit, Plaintiff encountered accessibility barriers that interfered with each of those tasks. Product images and other visual content were not communicated to her in a meaningful text-based form, certain actionable controls were empty or unlabeled when announced by her screen reader, and purchase-related controls and fields were not presented in a reliably understandable way for independent use.

38.     As a result, Plaintiff could not independently obtain the same product-identifying and descriptive information that a sighted consumer could gather from the page's images and visually presented content, could not reliably determine which controls were necessary to add the lip balm to her cart, and could not proceed confidently toward checkout without guesswork.

39.     The WAVE report for the SPF 15 Coconut Lip Balm page reflects 13 accessibility errors on that page and documents barrier types including missing alternative text and empty or unlabeled interactive elements, which are consistent with the barriers Plaintiff personally encountered while attempting to access and purchase that product.

40.     On or about May 22, 2026, Plaintiff returned to www.naplessoap.com to review and purchase Beach Bamboo Body Oil Spray 2 oz, a product she wished to consider as part of her ordinary skin-care routine.

41.     While on the Beach Bamboo Body Oil Spray 2 oz page at www.naplessoap.com, Plaintiff attempted to use her screen reader to identify the product, understand the visual presentation and content of the page, review product-specific information, locate and comprehend the controls necessary to select and purchase the item, and add the product to her cart.

42.     During that visit, Plaintiff again encountered accessibility barriers. Images and other visual content on the page lacked meaningful text alternatives, certain buttons and links did not communicate their purpose intelligibly to her screen reader, and form-related fields or selectors were not labeled in a manner that allowed reliable independent use.

43.     Because of those barriers, Plaintiff could not independently perceive the same information available to sighted consumers regarding the product's presentation and associated visual content, could not reliably navigate the page or identify the controls tied to purchasing functions, and could not meaningfully proceed through the purchasing flow for the Beach Bamboo Body Oil Spray 2 oz.

44.     The WAVE report for the Beach Bamboo Body Oil Spray 2 oz page reflects 19 accessibility errors on that page and documents recurring barriers including missing alternative text, empty buttons, empty links, and form-label-related defects, which are consistent with the barriers Plaintiff encountered while attempting to access and purchase that product.

45.     On or about June 11, 2026, Plaintiff again visited www.naplessoap.com, this time to review and purchase Fragrance Free Spa Bliss Soap, a product she found attractive because fragrance-free cleansing products are suitable for ordinary, repeat-use daily hygiene.

46.     While on the Fragrance Free Spa Bliss Soap page at www.naplessoap.com, Plaintiff attempted to use her screen reader and keyboard navigation to locate the product page, confirm the product's identity, review the content and information presented there, understand the product

imagery and page features, identify the purchase controls, and complete the transaction without assistance.

47. During that visit, Plaintiff again encountered barriers that prevented meaningful access. The page failed to provide meaningful alternative text for visual content, certain material interactive elements were empty or unlabeled when announced by her screen reader, and interactive fields, selectors, or controls necessary to complete a purchase were not presented in a reliable, screen-reader-compatible manner.

48. Those barriers prevented Plaintiff from independently accessing the same product-descriptive and product-identifying information that was conveyed visually to sighted users, from understanding the purpose of material interactive elements needed to navigate the page and initiate purchase-related actions, and from completing a purchase in a reliable, independent, and private manner.

49. The WAVE report for the Fragrance Free Spa Bliss Soap page reflects 27 accessibility errors on that page and again documents barrier categories including missing alternative text, empty buttons, empty links, and labeling defects, which are consistent with the barriers Plaintiff encountered while attempting to access and purchase that product. Exhibit B

50. On each of these occasions, Plaintiff was a bona fide prospective customer with a genuine interest in purchasing Defendant's products, and the accessibility barriers she encountered were tied directly to the specific goods she was trying to access.

51. The barriers encountered by Plaintiff were not isolated or accidental. They recurred across multiple product pages for different products and interfered with the same core shopping tasks: confirming product identity, accessing visually conveyed product information, understanding the purpose of interactive controls, operating purchase-related fields, adding items to a cart, and proceeding toward checkout.

52.     The WAVE reports reflect 13 errors on the SPF 15 Coconut Lip Balm page, 19 errors on the Beach Bamboo Body Oil Spray 2 oz page, and 27 errors on the Fragrance Free Spa Bliss Soap page. These page-specific error totals further support that Defendant's Website contains pervasive and recurring accessibility defects rather than isolated anomalies.

53.     Among the recurring barrier categories documented in the audit materials are missing alternative text for images, empty buttons, empty links, and form-related labeling defects. Each of those categories bears directly on Plaintiff's ability to access the specific products at issue, because each category affects whether a blind shopper can identify a product, understand the information displayed on its page, activate the correct purchasing controls, and complete a transaction independently.

54.     Because Plaintiff relies on accessible digital interfaces to shop independently, these barriers denied her privacy, autonomy, convenience, and equal participation in online commerce. Instead of being able to evaluate and purchase the products she selected on her own, Plaintiff was denied full and equal enjoyment of Defendant's goods, services, privileges, and advantages offered through the Website.

55.     Defendant has failed to take reasonable steps to test, remediate, and maintain its Website in an accessible condition.

56.     Upon information and belief, Defendant has no policy reasonably calculated to cause its Website to become and remain accessible to blind and visually impaired consumers.

57.     Plaintiff has suffered a past injury in fact through her inability to independently access the Website and complete intended transactions involving the specific products identified above, and she faces a real and immediate threat of future harm because she intends to return to the Website once it is made accessible.

58.     Plaintiff's injuries are directly traceable to Defendant's failure to maintain an accessible website, and they are redressable through the injunctive and other relief requested herein.

## CLASS ACTION ALLEGATIONS

59.     Plaintiff CHRISTINE THOMAS brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals.

60.     The proposed Class is defined as follows:

All legally blind individuals in the United States who have attempted to access Defendant's Website and were denied full and equal access due to the Website's failure to comply with WCAG 2.1 Level A and AA accessibility standards (the "Class").

61.     The proposed New York Subclass is defined as follows:

All legally blind individuals domiciled in the State of New York who have attempted to access Defendant's Website and were denied full and equal access due to the Website's failure to comply with WCAG 2.1 Level A and AA accessibility standards (the "New York Subclass").

62.     The proposed New York City Subclass is defined as follows:

All legally blind individuals domiciled in New York City who have attempted to access Defendant's Website and were denied full and equal access due to the Website's failure to comply with WCAG 2.1 Level A and AA accessibility standards (the "New York City Subclass").

63.     Numerosity is satisfied because the Class and Subclasses are so numerous that joinder of all members is impracticable. There are numerous blind and visually impaired individuals in the United States, New York State, and New York City who use screen-reading software to access online commerce.

64.     Commonality is satisfied because common questions of law and fact apply to all members of the Class and Subclasses, including whether Defendant's Website contains access barriers, whether Defendant failed to implement reasonable accessibility measures, whether those barriers deny blind users full and equal access, and whether injunctive and other relief should issue.

65.     Typicality is satisfied because Plaintiff's claims are typical of the claims of the Class and Subclasses. Plaintiff, like the other members, is legally blind, relies on screen-reading software, attempted to access Defendant's Website, and encountered access barriers that denied her full and equal enjoyment of Defendant's goods and services.

66.     Adequacy is satisfied because Plaintiff will fairly and adequately protect the interests of the Class and Subclasses and has retained counsel competent and experienced in disability rights and complex litigation.

67.     Class certification is appropriate under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class and Subclasses, making final injunctive and corresponding declaratory relief appropriate respecting the Class and Subclasses as a whole.

## FIRST CAUSE OF ACTION
*(Violations of the ADA, 42 U.S.C. § 12182 et seq.)*

68.     Plaintiff, CHRISTINE THOMAS, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

69.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12182(a), provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation.

70.     Defendant's Website is offered to the general public as Defendant's principal direct-to-consumer retail channel. As such, it must be equally accessible to all potential consumers, including those who are blind or visually impaired.

71.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

72.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination includes, inter alia, a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently because of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

73.     Defendant has discriminated against Plaintiff and the Class by maintaining a Website that is inaccessible to blind and visually impaired individuals, by failing to remove access barriers, and by failing to make the accessibility features of the Website available to individuals who are sight-impaired and rely on screen-reading software.

74.     Plaintiff and the Class have been denied full and equal access to Defendant's Website and to the goods, services, privileges, and advantages offered thereon.

75.     Defendant's acts and omissions violate Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services inferior to those

provided to non-disabled persons. Defendant has failed to take prompt and equitable steps to remedy the discriminatory conduct, and the violations are ongoing.

76.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests the relief set forth below.

**SECOND CAUSE OF ACTION**
*(Violation of the New York State Human Rights Law)*

77.     Plaintiff CHRISTINE THOMAS, on behalf of herself and the Class and New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

78.     At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law § 290 et seq., covered the actions of Defendant. Plaintiff, at all relevant times, as a result of her severe bilateral visual impairment and legal blindness, has a disability within the meaning of the NYSHRL.

79.     Defendant, at all relevant times, owns and operates a place of public accommodation—the Website—within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a person within the meaning of N.Y. Executive Law § 292(1).

80.     Plaintiff has visited the Website on multiple occasions and has encountered barriers to access on each occasion.

81.     Under N.Y. Executive Law § 296(2)(a), it is an unlawful discriminatory practice for the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation, because of the disability of any person, directly or indirectly, to refuse, withhold from, or deny to such person any of the accommodations, advantages, facilities, or privileges thereof.

82.     Discrimination under the NYSHRL includes the refusal to make reasonable modifications in policies, practices, or procedures, and the refusal to take such steps as may be

necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services.

83.    Defendant's actions violate the NYSHRL by owning and operating a Website that is inaccessible to blind and visually impaired individuals, by not removing access barriers to its Website, and by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities.

84.    Defendant has intentionally and/or willfully discriminated against Plaintiff and the New York Subclass in violation of the NYSHRL.

### THIRD CAUSE OF ACTION
*(Violation of the New York City Human Rights Law)*

85.    Plaintiff CHRISTINE THOMAS, on behalf of herself and the Class and New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

86.    At all times relevant herein, Defendant was subject to the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. Plaintiff is a person with a disability within the meaning of N.Y.C. Admin. Code § 8-102.

87.    Defendant's Website constitutes a place or provider of public accommodation within the meaning of N.Y.C. Admin. Code §§ 8-102 and 8-107.

88.    The NYCHRL requires places of public accommodation to provide full and equal enjoyment to persons with disabilities and to make reasonable accommodations so that persons with disabilities may have access to goods and services on equal terms.

89.    Defendant discriminated against Plaintiff and the New York City Subclass by maintaining a Website that denies blind and visually impaired individuals equal access to Defendant's goods and services, and by failing to make reasonable accommodations and modifications necessary to render the Website accessible.

90.    Defendant's conduct constitutes an unlawful discriminatory practice in violation of the NYCHRL, entitling Plaintiff and the New York City Subclass to damages, injunctive relief, attorneys' fees, costs, and all other available relief.

### FOURTH CAUSE OF ACTION
*(Violation of New York Civil Rights Law § 40-c)*

91.    Plaintiff CHRISTINE THOMAS, on behalf of herself and the Class and New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

92.    New York Civil Rights Law § 40-c guarantees that no person shall, because of disability, be subjected to any discrimination in civil rights by any other person or by any firm, corporation, or institution.

93.    By maintaining a Website that is inaccessible to Plaintiff and other legally blind consumers and by denying them equal access to Defendant's goods and services, Defendant has discriminated against Plaintiff and the New York Subclass because of disability in violation of New York Civil Rights Law § 40-c.

94.    As a direct and proximate result of Defendant's conduct, Plaintiff and the New York Subclass have suffered injury and are entitled to all available relief.

### FIFTH CAUSE OF ACTION
*(Violation of New York Civil Rights Law § 40-d)*

95.    Plaintiff CHRISTINE THOMAS, on behalf of herself and the Class and New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

96.    New York Civil Rights Law § 40-d provides for penalties and remedies arising from violations of § 40-c.

97.     Defendant's discriminatory conduct, as described herein, violated New York Civil Rights Law § 40-c and thereby entitles Plaintiff and the New York Subclass to recover the statutory damages and penalties authorized by § 40-d, in addition to other appropriate relief.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant the following relief:

- Certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as Class Representative, and appoint her counsel as Class Counsel;

- Declare that Defendant's Website violates Title III of the ADA, the NYSHRL, the NYCHRL, and the New York Civil Rights Law;

- Issue a permanent injunction requiring Defendant to make its Website readily accessible to and usable by blind and visually impaired individuals, including by bringing the Website into compliance with WCAG 2.1 Level AA or such other standard as the Court deems appropriate;

- Order Defendant to ensure that all images, buttons, links, headings, forms, labels, selection controls, and other interactive Website components are coded to be accessible to screen-reading software and keyboard navigation, including all product pages, the Homepage, and all checkout and account-related pages;

- Order Defendant to implement and maintain policies, practices, procedures, employee training, accessibility testing, consultant oversight, periodic audits, and user feedback mechanisms sufficient to ensure ongoing accessibility of the Website;

- Award Plaintiff, the Class, the New York Subclass, and the New York City Subclass all available statutory, compensatory, and/or actual damages to the fullest extent permitted by law;

- Award civil penalties where authorized by law;

- Award Plaintiff her reasonable attorneys' fees, litigation expenses, and costs; and

- Grant such other and further relief as the Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 23, 2026
New York, New York

**JOSEPH & NORINSBERG, LLP**

*Robert Schonfeld*

Robert Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Telephone No.: (212) 791-5396
Facsimile No.:
rschonfeld@employeejustice.com